LUKE A. BUSBY
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| SARAH TRACY, an individual, | |
| Plaintiff, | Case No. |
| Vs. | **COMPLAINT** |
| CHURCHILL COUNTY JUSTICE OF THE PEACE BENJAMIN TROTTER; and CHURCHILL COUNTY, a political subdivision of the State of Nevada, | **JURY TRIAL DEMANDED** |
| | **LR 16-6 ENE REQUESTED** |
| Defendant(s). | |

_____/

COMES NOW, SARAH TRACY, an individual ("Tracy" or "Plaintiff") by and through the undersigned counsel, and hereby brings this action against CHURCHILL COUNTY JUSTICE OF THE PEACE BENJAMIN TROTTER ("Trotter"), CHURCHILL COUNTY, a political subdivision of the State of Nevada, and JOHN DOES I through X

inclusive; (collectively "Defendants"), for damages resulting from Tracy's dismissal from Churchill County resulting from her exercise of her First Amendment rights.

**PARTIES**

1. At all times relevant to this proceeding, Plaintiff was and is a resident of Churchill County, Nevada.

2. At all times relevant to this proceeding, Defendant CHURCHILL COUNTY was and is a political subdivision of the State of Nevada.

3. At all times relevant to this proceeding, Defendant Trotter was and is a resident of the City of Fallon, Churchill County, Nevada, and was an employee of Churchill County acting under color of Nevada law. Trotter is sued in his individual capacity.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOE individuals 1-10 (inclusive) and ROE corporations 1-10 (inclusive), and each of them, are unknown to Plaintiffs at this time and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and belief, that each DOE/ROE defendant is responsible for the actions herein alleged and will seek leave of Court to amend this Complaint when the names of said defendants have been ascertained.

**JURISDICTION AND VENUE**

5. This action arises under 42 U.S.C. 1983.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343, 1367, 2201 and 42 U.S.C. Sections 1983 and 1988, as the Plaintiff's claim arises under Federal Law.

7. The Court has supplemental jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. 1367.

8. The Court has personal jurisdiction over the Defendants because the alleged incidents described below occurred within this District.

9. Venue is proper pursuant to 28 U.S.C. Section 1391 in the Northern District of Nevada because the acts giving rise to the Plaintiff's claims occurred in this District.

## ALLEGATIONS OF FACT

10. On May 12, 2003, Tracy began her employment with Churchill County at the Sheriff's Office. Her direct supervisor was Traci Ricks, the dispatch supervisor.

11. Under Ricks, Tracy never had any write-ups or verbal reprimands during her employment with the Sheriff's Office.

12. On December 29, 2006, Tracy started working at the New River Township Justice Court as a court clerk. Her supervisor was Brenda Ingram.

13. Around August of 2010, Ingram went to the Court Services department as the director, and Alethea Stuart became Tracy's supervisor.

14. After being hired in 2006, Tracy was the traffic clerk for 3 years, civil clerk for 5 years, and felony clerk for 3 years.

15. Tracy was selected for the Chief Court Clerk in August 2017 and held that position until her termination on March 11, 2024.

16. From 2003 to 2020, Tracy had never received any reprimands, written or verbal. She had good to excellent performance reviews.

17. Ben Trotter took office as Justice of the Peace in January 2019.

18. In 2019, Trotter started working at the Justice Court. Tracy did her best to help Trotter, explaining all the court's paperwork procedures and his job duties.

19. During COVID, Trotter wrote Tracy up on two separate occasions for violation of the mask policy that Churchill County had in place. Tracy responded to the violations and write-ups. However, in September 2021, Trotter still gave Tracy an excellent evaluation.

20. In the last few months of 2023, Trotter's behavior towards Tracy changed noticeably. Tracy was apprehensive about Trotter's concerns in light of the upcoming election for Justice of the Peace.

21. Ingram, whom Tracy had an excellent working relationship and supported , was running against Trotter for this position. Tracy worried that Trotter viewed this connection unfavorably, straining their professional relationship during the election period.

22. In January 2024, Tracy emailed Churchill County's Human Resources Department and stated she feared Trotter would retaliate against her because of the circumstances surrounding the election.

23. In February 2024, Tracy allowed Ingram to put a campaign sign at her house. Trotter lived nearby, and Tracy believes Trotter saw the sign while campaigning as after the sign went up Trotter's behavior towards Tracy changed noticeably.

24. On February 19, 2024 Tracy made supportive comments on Ingram's Justice of the Peace Facebook page.

25. On March 11, 2024, Tracy received a text from Trotter at 6:30 in the morning, asking her to come to the office. Tracy anticipated what was happening.

26. When she arrived, Trotter was there with HR, Geof Stark, and handed her a letter of termination explaining that Tracy was being terminated because of an "atmosphere of discontent" in the office that led to several staff leaving the office.

27. Tracy told Stark that she had predicted this would happen and had asked HR for help.

28. Tracy then asked Trotter to explain the "discontent" in the office, but Stark interjected, stating she could schedule a meeting for more explanation.

29. Trotter told Tracy she had 10 minutes to gather her things and leave before the staff arrived.

30. Throughout her 21 years working for Churchill County, Tracy never received any written reprimands, except for the mask policy violations written by Trotter.

31. Every evaluation Tracy received during her time at Churchill County was always good or above.

32. Tracy was fired by Trotter because of her support for Ingram, Trotter's opponent, for the justice of the peace position.

33. Constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech have been clearly established since at least 1989. *Coszalter v. City of Salem*, 320 F.3d 968, 979 (9th Cir. 2003).

## CLAIMS FOR RELIEF

### First Claim For Relief
### Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983
### (Against Trotter)

34. Plaintiff incorporates all preceding paragraphs as though each were fully set forth verbatim hereat.

35. Tracy engaged in constitutionally protected activity when she spoke as a private citizen on matters of public concern, by posting a sign supporting Trotter's opponent in her yard.

36. As a result of her constitutionally protected activity, Tracy was subjected to adverse action by Trotter under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when Trotter terminated Tracy.

37. There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against Tracy by Trotter because Trotter punished Tracy for her constitutionally protected activity.

38. As a direct result of exercising her constitutional right to speak publicly—on his own time, off-duty, as a citizen—publicly on matters of public concern,

Trotter retaliated against her, including, inter alia, taking adverse employment actions against her, by terminating her for the content and/or viewpoint of her speech. Absent Tracy exercising her constitutionally protected rights to speak, Trotter would not have taken the adverse employment actions against her set forth herein.

39. At all times mentioned herein, Tracy's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. Tracy's speech was on matters of widely-debated public concern.

40. By taking adverse employment actions against Tracy that were substantially motivated by her constitutionally protected speech, Trotter violated Tracy's rights under the First Amendment to the United State Constitution.

41. As a direct result of Trotter's acts and omissions, Tracy has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost wages and pension income; and lost future income from post-retirement public sector employment opportunities that will be unavailable to her because she now has an adverse employment record.

42. As a direct, foreseeable, and proximate result of Trotter's acts and omissions, Tracy suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to his damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

43. In performing the acts herein alleged, Trotter acted intentionally to injure Tracy, namely, to terminate her employment, because of the content and viewpoint of his constitutionally protected speech on matters of public concern, which she engaged in while off duty, as a citizen.

44. Trotter's conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of Tracy's civil rights such that punitive or exemplary damages are warranted.

///

## Second Claim For Relief

**Retaliation Based on Exercise of Right to Free Speech in Violation of the Nevada Constitution**
**(Against Trotter)**

45. Plaintiff incorporates all preceding paragraphs as though each were fully set forth verbatim hereat.

46. Tracy engaged in a protected activity under the Nevada Constitution when she spoke as a private citizen on matters of public concern, by posting a sign supporting Trotter's opponent in her yard.

47. As a result of her constitutionally protected activity, Tracy was subjected to adverse action by Trotter under color of state law that would chill a person of ordinary firmness from continuing to engage in that protected activity, when Trotter terminated Tracy.

48. There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken against Tracy by Trotter because Trotter punished Tracy for her constitutionally protected activity.

49. As a direct result of exercising her constitutional right to speak publicly—on her own time, off-duty, as a citizen—publicly on matters of public concern, Trotter retaliated against her, including, inter alia, taking adverse employment actions against her, by terminating her for the content and/or viewpoint of her speech. Absent Tracy exercising her constitutionally protected rights to speak, Trotter would not have taken the adverse employment actions against him set forth herein.

50. At all times mentioned herein, Tracy's constitutionally protected activities were related to matters of public concern, and were not undertaken pursuant to job duties. Tracy's speech was on matters of widely-debated public concern.

51. By taking adverse employment actions against Tracy that were substantially motivated by her constitutionally protected speech, Trotter violated Tracy's rights under Article 1 Section 9 of the Nevada Constitution.

52. As a direct result of Trotter's acts and omissions, Tracy has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost wages and pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to her because she now has an adverse employment record.

53. As a direct, foreseeable, and proximate result of Trotter's acts and omissions, Tracy suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to her damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

54. In performing the acts herein alleged, Trotter acted intentionally to injure Tracy, namely, to terminate her employment, because of the content and viewpoint of her constitutionally protected speech on matters of public concern, which she engaged in while off duty, as a citizen.

55. Trotter's conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of Tracy's civil rights such that punitive or exemplary damages are warranted.

### Third Cause of Action

### 42 U.S.C. 1983 – Monell Claim
### (Against Churchill County)

56. Plaintiff incorporates all preceding paragraphs as though each were fully set forth verbatim hereat.

57. Trotter acted under color of state law.

58. Trotter's termination of Tracy deprived Tracy of her right to Free Speech under the First Amendment.

59. Trotter acted under color of state law.

60. Trotter had final policymaking authority from Churchill County concerning the termination of Tracy.

61. Churchill County ratified Trotter's firing of Tracy, that is, Churchill County knew of and specifically made a deliberate choice to approve Trotter's firing of Tracy and the basis for it.

62. As a direct result of Churchill County's acts and omissions, Tracy has suffered significant damages in an amount subject to proof at trial, including psychological and emotional harms; reputational harms; lost wages and pension income; and lost future income from post-retirement private-sector employment opportunities that will be unavailable to her because she now has an adverse employment record.

63. As a direct, foreseeable, and proximate result of Churchill County's acts and omissions, Tracy suffered and continues to suffer mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, to her damage, in an amount according to proof at the time of trial, and expenses incurred for treatment of same.

64. In performing the acts herein alleged, Churchill County acted intentionally to injure Tracy, namely, to terminate her employment, because of the content and viewpoint of her constitutionally protected speech on matters of public concern, which she engaged in while off duty, as a citizen.

65. Churchill County's conduct was oppressive, despicable and performed with a willful, conscious, and reckless disregard of Tracy's civil rights such that punitive or exemplary damages are warranted.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

a. Enter a declaratory judgment that the actions complained of herein are unlawful and violate the United States Constitution and Nevada law.

b. Order Defendants to pay the compensation denied or lost to Plaintiff to date by reason of Defendants' unlawful actions, in amounts to be proven at trial;

c. Order Defendants to pay compensatory damages for the Plaintiff's lost property and emotional pain and suffering, in an amount to be proven at trial;

d. Order Defendants to pay exemplary and punitive damages;

e. Order Defendants to pay attorneys' fees and costs of the action pursuant to 42 U.S.C. 1988.

f. Order Defendants to pay interest at the legal rate on such damages as appropriate; and

g. Grant any further relief that the Court deems just and proper.

Respectfully submitted this: Jul 5, 2024

By: __/s/ Luke Busby, Esq._____
Luke Busby
Nevada State Bar No. 10319
316 California Ave 82.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*